IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN MCKINNEY, INDIVIDUALLY AND :
DERIVATIVELY, ON BEHALF OF :
PRIMUS ENTERPRISE, LLC :
                                       :

        PLAINTIFFS :

                                :

        v. : CIVIL ACTION NO.

THOMAS PINTER, PINTER MEMORIALS, : **18cv4185**
VETSUSA II, INC., AND :
STEPHEN WORTHINGTON :

        DEFENDANTS :
and :

PRIMUS ENTERPRISE, LLC :

        A NOMINAL DEFENDANT :

*FILED*
*SEP 28 2018*
*KATE BARKMAN, Clerk*
*By_____ Dep. Clerk*

## COMPLAINT

Plaintiff, STEPHEN MCKINNEY individually and derivatively on behalf of PRIMUS

ENTERPRISE, LLC, by and through its counsel, Timoney Knox, LLP, and files this Complaint

against Defendants, THOMAS PINTER, PINTER MEMORIALS, VETSUSA II, INC. and

STEPHEN WORTHINGTON, and names as nominal defendant only, PRIMUS ENTERPRISE,

LLC, and in support thereof avers as follows:

**I.    PARTIES.**

    1.    Plaintiff Stephen McKinney ("McKinney") is an adult individual residing at 1398

Granary Road, Blue Bell, Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania.

    2.    Plaintiff Primus Enterprise, LLC ("Primus Enterprise") has a principal place of

business at 1710 Walton Road, Suite 207, Blue Bell, PA 19422.



3.      At all times relevant hereto, McKinney has owned and currently owns a fifty

percent (50%) interest in Primus Enterprise, is fifty percent (50%) of the membership of Primus

Enterprise and in an equal fifty percent (50%) manager of Primus Enterprise.

4.      At all times material hereto, McKinney served as the Chief Executive Officer of

Primus Enterprise and continues to serve in that capacity.

5.      McKinney sues in his individual capacity as a 50% owner, manager and member

of Primus Enterprise and derivatively on behalf of Primus Enterprise.

6.      Defendant Tom Pinter ("Pinter") is an adult individual residing at 5161 Roma St.,

Ave Maria, Florida, and in any event, is a citizen of the State of Florida.

7.      At all times relevant hereto, Pinter has owned and currently owns a fifty percent

(50%) interest in Primus Enterprise, is fifty percent (50%) of the membership of Primus

Enterprise and is an equal fifty percent (50%) manager of Primus Enterprise.

8.      Pinter is the Chief Operating Officer of Primus Enterprise.

9.      On information and belief Pinter Memorials, Inc. ("Pinter Memorials") is a

Florida corporation with a principal place of business located at 2050 Commerce Avenue, Unit 3,

Immokalee, Florida.

10.      On information and belief VetsUSA II, Inc. ("VetsUSA") is a corporation

organized under the laws of the Commonwealth of Virginia with offices at 1460 N. Longfellow

Street, Arlington, Virginia.

11.      On information and belief Stephen Worthington ("Worthington") is an adult

individual residing at an address that is at this time unknown, but, is within the Commonwealth

of Virginia, and Worthington is a citizen of Virginia.

2

## II.     JURISDICTION AND VENUE

12.     Venue is proper under 28 U.S.C. §§ 1391(b)(2) and (3) and 1391(c)(2).

13.     Personal jurisdiction over Pinter is proper under the Pennsylvania Long-Arm Statute, 42 Pa.C.S. § 5322, because Pinter owns and possesses the interest set forth in paragraph 7, above, and is the Chief Operating Officer of Primus Enterprise, and the facts set forth below and paragraph 14..

14.     Pinter purposefully availed himself of the privilege of conducting activities within Pennsylvania and in fact did so by, among other activities, owning a 50% interest in Primus Enterprise, comprising 50% of the membership of Primus Enterprise and being an equal 50% manager of Primus Enterprise, utilizing Pennsylvania as the principal place of business for Primus Enterprise, registering Primus Enterprise as a foreign company authorized to do business in Pennsylvania, receiving and paying operating and production invoices from Pennsylvania, making payroll for the labor employed by Primus Enterprise, serving as Chief Operating Officer of Primus Enterprise, accepting a loan for capitalization for his interest in Primus Enterprise from Wenzco Supplies LLC ("Wenzco"), a Pennsylvania limited liability company having its principal place of business located at 191 Kelly Road, Quakertown, Bucks County, Pennsylvania, 18951.

15.     Defendant Pinter Memorials has sustained consistent contacts within the Commonwealth of Pennsylvania, conducting business and making sales in Pennsylvania, and purchasing products, for example from Wenzco, over a number of years.

16.     Further, as claimed by Pinter, Pinter Memorials loaned and/or extended credit to Primus Enterprise in an amount of approximately $209,000 and, to the extent that such lending or credit extension occurred, it inherently must involve corporate operations of Primus Enterprise

3

in Pennsylvania, where all accounting, banking, book-keeping, etc., occur and corporate records are kept.

17.     Pinter Memorials conduct, alleged herein in the following Counts, caused harm and tortious injury here in Pennsylvania to Primus Enterprise and McKinney.

18.     Defendant VetsUSA contracted Primus Enterprise, with its principal place of business in Pennsylvania, as alleged herein, made payment to office in Pennsylvania, and sent and received invoices, correspondence, orders, and the like, to and from the principal place of business of Primus Enterprise in Pennsylvania.

19.     Defendant Worthington directed and received business correspondence, emails, undertook negotiations via telephone, signed and then sent documents to Pennsylvania, or received and then signed and sent document back to Pennsylvania, and directed the conduct and actions of Defendant VetsUSA in connection with activities in Pennsylvania as alleged herein.

20.     Defendant Worthington's conduct alleged herein in the following Counts, caused harm and tortious injury here in Pennsylvania to Primus Enterprise and McKinney.

21.     At all times relevant hereto, Primus Enterprise has received invoices at its Blue Bell, Pennsylvania, address, has sent billing from the Blue Bell address and has held out and in fact utilized the Blue Bell address as its home office and primary place of business to the Alabama Department of Revenue, the Commonwealth of Pennsylvania, and the State of Delaware.

22.     At all times material hereto, Primus Enterprise has run all "back office" activities through Pennsylvania, including pay roll, staff, and hiring contractors.

4

## III.    FACTUAL BACKGROUND

23.    On or about April 5, 2018, at the direction of a professional consultant located in Blue Bell, Pennsylvania, a Certificate of Formation was executed for Primus Enterprise in the State of Delaware identifying a registered office address of 16192 Coastal Highway, Lewes, DE 19958.

24.    On or about May 1, 2018, Primus Enterprise, LLC registered with the Pennsylvania Department of Revenue, with an account I.D. Number of 67610044.

25.    At all times material hereto, Primus Enterprise has had and continues to have a home office address and primary place of business at 1710 Walton Road, Suite 207, Blue Bell, PA 19422.

26.    Plaintiff McKinney and Defendant Pinter entered into an oral operating agreement regarding their interests in Primus Enterprise ("Operating Agreement").

27.    The Operating Agreement provided, generally:

a.    That McKinney and Pinter would be the sole and equal managers and members of Primus Enterprise;

b.    For an agreed upon business plan, whereby Primus Enterprise would operate at its current facility and, after the renewal period for the current facility, on or about October 1, 2018, Primus Enterprise would begin the planning and moving process for all plant operations to Pennsylvania to locate near one of its quarry suppliers and ultimately acquire third party processing work as an additional business line, in the event that most favorable lease terms for an expanded use of the current could not be reached with the commercial landlord;

c.    For a timetable of to have all debt of Primus Enterprise paid off and all contributions returned at or near the date of October 1, 2018 payoff debt;

d.      For the distribution of profit to be at the rate of 50/50 as between Pinter and McKinney;

e.      That, in addition to acquiring third party processing works, Primus Enterprise would endeavor to acquire other contracts for production of gravestones finished to specification, similar to the contracts and orders Primus Enterprise entered into and performed with VetsUSA.

28.      Under the Operating Agreement's business plan, McKinney and Pinter calculated Primus Enterprise's expected profit to be:

| Period | No. of Stones | Profit |
|--------|---------------|--------|
| 4/1/2018-9/30/2018 | 14,460 | $1,184,274 |
| 10/1/2018-9/30/2019 | 20,240 | $1,657,656 |
| 10/1/2019-9/30/2020 | 21,260 | $1,741,194 |
| 10/1/2020-9/30/2021 | 23,330 | $1,910,727 |
| 10/1/2021-9/30/2022 | 25,030 | $2,099,957 |
| | TOTAL | $8,543,808 |

29.      The aforementioned profit summary does not take into account any further expansion of contracts or acquisition of third party processing works.

30.      In fact, from just April 2018 until August 31, 2018, excluding one-time start-up costs, and dividing expenses and cost over 12 months, profit would be $550,000.

31.      On April 24, 2017, Primus Enterprise entered into a contract with VetsUSA to provide to VetsUSA  gravestones cut to specification.

32.      Further, during late summer of 2018, McKinney, on behalf of Primus Enterprise, obtained a commitment from an international commercial vendor that the vendor would partner

with other similar vendors to pool marble orders and place those orders with Primus Enterprise to secure a discounted price per stone.

33.     However, on information and belief, the aforementioned commitment was lost and did not materialize due to the conduct of Pinter, Pinter Memorials, VetsUSA, and Worthington, all as alleged herein.

34.     At all times material hereto, McKinney designed, fabricated and implemented a new and improved fabrication process ("Fabrication Processes") for the gravestones to be produced by Primus Enterprise, which process:

        a.     is significantly automated over past methods;

        b.     is faster than the typical processes in place for gravestone production over the past 80 years;

        c.     allows for production at a pace in excess of two to three times standard production methods;

        d.     minimizes exertion by laborers;

        e.     minimizes damage to product, specifically to the stone from its existence as a raw material through to the completion of the gravestone;

        f.     McKinney developed for the benefit of Primus Enterprise;

        g.     is known only to McKinney, Pinter, and Primus Enterprise and is not known to the competitors of Primus Enterprise;

        h.     provided a competitive advantage to Primus Enterprise over its competitors.

35.     The Fabrication Processes developed by McKinney are trade secrets under all applicable law.

7

36.     On information and belief, Pinter has either alone, or in concert with others:

a.      created a separate entity for his own benefit and pecuniary gain to which he has diverted, and/or usurped, the existing business and contracts of Primus Enterprise, and/or the current and future business opportunities of Primus Enterprise; and/or

b.      diverted, and/or usurped, the existing business and contracts of Primus Enterprise, and/or the current and future business opportunities of Primus Enterprise to Pinter Memorials; and/or

c.      otherwise diverted, and/or usurped, the existing business and contracts of Primus Enterprise, and/or the current and future business opportunities of Primus Enterprise to himself, or to others and from which he will stand to have a pecuniary gain.

37.     On information and belief, Pinter has either alone, or in concert with others, unlawfully and wrongfully appropriated the Fabrication Processes developed exclusively by McKinney on behalf of and for the benefit of Primus Enterprise and:

a.      created a separate entity for his own benefit and pecuniary gain to which he has diverted, and/or usurped, the Fabrication Processes for use by this separate entity in furtherance of the wrongful conduct alleged herein; and/or

b.      diverted, and/or usurped, the Fabrication Processes for use by Pinter Memorials in furtherance of the wrongful alleged herein; and/or

c.      otherwise diverted, and/or usurped, the Fabrication Processes to himself, or to others and from which he will stand to have a pecuniary gain.

38.     On or about August 12, 2018, Pinter froze out and excluded McKinney from the operations, management, and physical manufacturing plant of Primus Enterprise on the threat of arrest by the managing agent at the site of the leased manufacturing plant of Primus Enterprise.

1:79663-1

39.     Pinter took immediate steps to exclude McKinney and to consolidate Pinter's control by, among other conduct:

a.      soliciting VetsUSA and/or Worthington to purchase gravestones and/or other products from an entity owned or controlled by Pinter, or from which Pinter obtains pecuniary benefit, and/or Pinter Memorials;

b.      directing that the third party site manager exclude, ban, bar McKinney and keep him away by threat of arrest;

c.      directing employees of Primus Enterprise to not communicate with McKinney;

d.      advising current and prospective vendors and other commercial partners of Primus Enterprise to no longer communicate with McKinney and only communicate with Pinter.

40.     During the time Pinter froze out and excluded McKinney, as set forth above and herein, Pinter mismanaged Primus Enterprise, operated at less than capacity, and incompetently operated Primus for his own self-interest, and without exercising his best efforts, and did so with disloyalty and fidelity only to his own self-interest and not to Primus Enterprise or McKinney, and began diverting the contracts and business operations of Primus Enterprise, and depleting assets.

41.     On information and belief, at or near, and following, the freezing out and exclusion of McKinney, Pinter, has taken trade secrets and/or other intellectual property owned by Primus Enterprise, including the Fabrication Processes, know-how, consumer lists and contracts and other prospective contracts and opportunities and has provided them to separate competing entities owned or controlled by Defendant Pinter, or from which Pinter receives pecuniary gain.

9

42.     Pinter has repeatedly threatened McKinney and Primus Enterprise with unilateral dissolution and has taken affirmative steps in doing so.

43.     Pinter, VetsUSA, Worthington and Pinter Memorials, and perhaps others, have created a scheme whereby after the rapid, successful and lucrative start-up of Primus Enterprise, its incurring and payment of development and start-up costs, securing of contracts, rapid streamlining of its production processes, the development of its Fabrication Processes, and significant profitability in just 4 months, those Defendants are now diverting the business and prospective business of Primus Enterprise to others whereby only Pinter, VetsUSA, Worthington, and/or Pinter Memorials will benefit, while excluding McKinney and unlawfully appropriating the developed know how, experience, and start-up costs of time, money, and trial and error, invested in Primus Enterprise.

44.     Both McKinney and Primus Enterprise are harmed by the conduct alleged herein, in the loss of profit, loss of future profits, loss of the value of the Primus Enterprise, loss of business opportunity, and existing and prospective contracts, and loss of trades secret value, and the expenditure of counsel fees and costs to prosecute this action.

45.     Pinter has acted in an outrageous, intentional, reckless and malicious manner to harm McKinney and Primus Enterprise.

## IV.     DERIVATIVE ALLEGATIONS

46.     McKinney brings this action derivatively to redress injuries suffered by Primus Enterprise as a direct result of breaches of fiduciary duties by Pinter.

47.     McKinney currently owns, and owned at all times material hereto, 50% of the membership interest of Primus Enterprise and is an equal 50% manager, and is therefore a proper party pursuant to 6 Del. C. Sec. 18-1004.

1179663-1

48.     McKinney will adequately and fairly represent the interests of Primus Enterprise and its members in enforcing and prosecuting their rights, and has retained competent and experienced litigation counsel.

49.     McKinney has not made any demand upon management of Primus Enterprise to institute this action against the Defendants in as much as such demand would be a futile and useless act for the following reasons, including others:

a.     Pinter's conduct as alleged herein was not a valid exercise of business judgment by him as 50% of the ownership and management of Primus Enterprise;

b.     Pinter cannot be trusted to act in the best interests of Primus Enterprise with respect to his own breaches of fiduciary duty;

c.     Pinter cannot be trusted to act in the best interests of Primus Enterprise due to his own personal pecuniary gain through his interests in Pinter Memorials and the business arrangements which Pinter has put in place, or is now putting in place, between himself, Pinter Memorials, VetsUSA, and Worthington;

d.     Further, as McKinney and Pinter each are equal 50% of the membership interest and 50% of the management of Primus Enterprise, McKinney could not solely prosecute this action in the name of Primus Enterprise.

50.     None of the actions challenged in this Complaint are the product of a valid exercise of business judgment by Pinter.

51.     Pinter is not disinterested or independent as it relates to the claims stated herein.

52.     Pursuant to 6 Del. C. Sec. 18-1004, if a derivative action is successful, in whole or in part, as a result of a judgment, compromise or settlement of any such action, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees, from any recovery

in any such action or from a limited liability company, and McKinney avails himself of this provision and makes demand thereunder.

## V.   CAUSES OF ACTION

### COUNT I
### BREACH OF FIDUCIARY DUTY
#### McKinney, individually and derivatively v. Pinter

53.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

54.     As an owner of 50% of the membership interest and a 50% equal manager and officer of Primus Enterprise, Pinter owes fiduciary duties to McKinney and to Primus Enterprise, including the duty of loyalty and good faith.

55.     Pinter breached his fiduciary duties owed to McKinney and Primus Enterprise by, among other things, mismanaging Primus Enterprise, diverting existing and prospective business opportunities, competing with Primus Enterprise, misappropriating trade secrets and freezing out McKinney from the operations, management and profit of Primus Enterprise, and such further conduct as alleged herein, which is incorporated in this Count I as though set forth at length.

56.     As a direct result of Pinter's breaches of fiduciary duties, McKinney and Primus Enterprise each has suffered damages as alleged herein.

**WHEREFORE**, Plaintiff Stephen McKinney, individually, and derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Defendant Thomas Pinter in an amount in excess of the jurisdictional limit of $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

1179663-1

## COUNT II
## BREACH OF OPERATING AGREEMENT
### McKinney, individually v. Pinter

57.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

58.     Section 18-101(7) of the Delaware Limited Liability Company Act defines a Limited Liability Company agreement as "any agreement . . . written, oral or implied, of the member or members as to the affairs of a limited liability company and the conduct of its business."

59.     Pinter and McKinney each are 50% owners of the membership interest of Primus Enterprise and 50% equal managers of Primus Enterprise under the oral Operating Agreement.

60.     Pinter's breach of the Operating Agreement includes the following conduct:

     a.     breaching the implied duty of good faith and fair dealing;

     b.     diverting the assets, existing and prospective contracts and business opportunities of Primus Enterprise;

     c.     freezing McKinney out of Primus Enterprisel

     d.     inducing VetsUSA to terminate its contract with Primus Enterprise, and/or to divert existing and/or prospective contracts to Pinter Memorials or other entities owned or operated by Pinter, or from which Pinter receives pecuniary gain;

     e.     refusing to pay invoices;

     f.     refusing to make distributions as agreed under the Operating Agreement;

     g.     misappropriating the Fabrication Processes;

     h.     taking affirmative steps in violation of the business plan of Primus Enterprise;

1179663-1

   i.  taking affirmative steps to compete against Primus Enterprise;

   j.  breaching each of the specific terms of the Operating Agreement set out herein;

   k.  threatening and taking affirmative steps to unilaterally dissolve Primus Enterprise;

   l.  such other conduct as may be revealed in the course of litigation; and

   m.  such other conduct as alleged herein.

61.  As a direct result of Defendant Pinter's breach of the Operating Agreement, McKinney has suffered damages as alleged herein.

**WHEREFORE**, Stephen McKinney, respectfully requests judgment in his favor and against Thomas Pinter in an amount in excess of the jurisdictional limit of $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

## COUNT III
### TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS
### McKinney, derivatively v. Worthington, Pinter and Pinter Memorials

62.  Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

63.  Primus Enterprise possessed an existing contractual and/or business relationship with VetsUSA as alleged herein.

64.  At all times relevant hereto Primus Enterprise had a contract, contracts, and/or existing business relationship with VetsUSA to provide it with gravestones cut to specification.

65.  Further, as it relates to VetsUSA, Primus Enterprise had continuing and prospective contracts and/or a prospective business relationship with VetsUSA.

66.     Based on information and belief Pinter caused VetsUSA to end its contract with Primus Enterprise and divert business from Primus Enterprise.

67.     Based on information and belief Pinter, while acting individually and in his capacity as an officer of Pinter Memorials, caused Primus Enterprise to lose future orders and additional work from VestUSA and others by steering existing and prospective contracts away from Primus Enterprise to other entities owned or controlled by Pinter, or from which he received pecuniary gain.

68.     Further, Primus Enterprise possessed prospective contractual relationships with VetsUSA for further finished gravestone orders, and for a larger percentage of the total finished gravestone orders placed by VetsUSA with all suppliers.

69.     Said prospective contractual relationship with VetsUSA would be a continuation of current purchases, but in higher quantities, giving Primus Enterprise a larger share of VetsUSA's total orders.

70.     Primus Enterprise, VetsUSA, Pinter, McKinney, Worthington and others met and discussed the aforementioned prospective contractual relationship on multiple occasions and took definitive steps to consummate those prospective contracts such that more than a reasonable probability exists that VetsUSA and Primus Enterprise would have so contracted and/or such increased orders by VetsUSA would have been placed with Primus Enterprise.

71.     As alleged herein, Worthington, Pinter, and Pinter Memorials, upon the successful investment of start-up costs into Primus Enterprise and the investment of related money and time, and the realization of the true profitability of Primus Enterprise in 2018 and potential for increased profitability in succeeding years, set about with purpose and intent to harm Primus Enterprise by causing VetsUSA to transfer existing, or reasonably predictable, orders for finished

1179663-1

gravestones, as alleged herein, to Pinter Memorials, or to other entities owned or controlled by Pinter, or from which he obtains pecuniary gain.

72.    None of them, Worthington, Pinter, or Pinter Memorials, possessed any privilege or justification for any of the alleged interference.

73.    As the result of the aforementioned interference, and but for the said interference of the named Defendants, Primus Enterprise lost its existing contract and orders with VestUSA and has lost all prospective contractual relations with VetsUSA, and as a result has suffered or will suffer damages as alleged herein.

74.    Pinter directly participated in the aforementioned tortious conduct as an officer and the principal of Pinter Memorials.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Thomas Pinter, Pinter Memorials, and Stephen Worthington in an amount in excess of the jurisdictional limit of $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIPS**
**McKinney, individually v. Worthington, VetsUSA and Pinter Memorials**

75.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

76.    McKinney possessed an existing contractual and/or business relationship with Pinter by virtue of the Operating Agreement between he and Pinter concerning the operations, management, business plan and profit of Primus Enterprise, as alleged herein.

1179663-1

77.     As alleged herein, Worthington, VetsUSA, and Pinter Memorials, upon the successful investment of start-up costs into Primus Enterprise and the investment of related money and time, and the realization of the true profitability of Primus Enterprise in 2018 and potential for increased profitability in succeeding years, set about with purpose and intent to harm Primus Enterprise by causing, encouraging, and/or supporting Pinter in transferring existing, or reasonably predictable, orders for finished gravestone, as alleged herein, to Pinter Memorials, or to other entities owned or controlled by Pinter, or from which he obtains pecuniary gain, and otherwise abandoning and breaching the Operating Agreement and interfering with the operations of Primus Enterprise, as alleged herein.

78.     None of them, Worthington, VetsUSA, or Pinter Memorials, possessed any privilege or justification for the alleged interference with the Operating Agreement.

79.     As the result of the aforementioned interference, McKinney suffered or will suffer losses as alleged herein.

**WHEREFORE,** Stephen McKinney respectfully requests judgment in his favor and against Defendants VetsUSA, Pinter Memorials, and Stephen Worthington in an amount in excess of the jurisdictional limit off $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

### COUNT V
### INJUNCTION
### McKinney, individually v. Pinter

80.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

81.     McKinney has suffered and continues to suffer irreparable harm from Pinter continuing:

a.     to freeze out McKinney from the operations, management, and profit of Primus Enterprise;

b.     to divert business existing and prospective contracts and business opportunities of Primus Enterprise, as alleged herein;

c.     dissipate the assets and misappropriate the trade secrets of Primus Enterprise; and

d.     to breach such other fiduciary duties owed by Pinter to McKinney.

82.     Greater injury will occur from refusing the injunction and allowing Pinter's wrongful, harmful, and inequitable conduct to continue.

83.     An injunction will restore the parties to the status quo.

**WHEREFORE**, Stephen McKinney, respectfully requests judgment in his favor and against Thomas Pinter, together with an order entering an appropriate injunction against Thomas Pinter together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

**COUNT VI**
**INJUNCTION**
**McKinney, derivatively v. Pinter**

84.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

85.     Primus Enterprise has suffered and continues to suffer irreparable harm from Pinter continuing:

a.     to freeze out McKinney from the operations and management of Primus Enterprise thereby diminishing operations and profitability;

1179663-1

      b.     to divert business existing and prospective contracts and business opportunities of Primus Enterprise, as alleged herein;

      c.     dissipate the assets and misappropriate the trade secrets of Primus Enterprise, including the Fabrication Processes; and

      d.     to breach such other fiduciary duties owed by Pinter to Primus Enterprise.

86.     Greater injury will occur from refusing the injunction and allowing Pinter's wrongful, harmful, and inequitable conduct to continue.

87.     An injunction will restore the parties to the status quo.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Thomas Pinter, together with an order entering an appropriate injunction against Thomas Pinter together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

**COUNT VII**
**UNJUST ENRICHMENT**
**McKinney, derivatively v. Pinter and Pinter Memorials**

88.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

89.     Primus Enterprise obtained contracts, invested in facilities, labor and equipment, developed processes, including the Fabrication Processes, incurred start-up costs, in both time and money, and vetted and obtained reliable suppliers of raw materials, developed industrial know-how, and created a highly profitable business in a short time.

90.     Pinter in his capacity as an officer of Pinter Memorials, under inequitable circumstances, in bad faith, and with unclean hands, diverted the foregoing in whole or in part, together with the competitive advantage developed by Primus Enterprise, to Pinter Memorials,

without any consideration or value exchanged, and without the consent of McKinney or Primus Enterprise.

91.    Pinter in his capacity as an officer of Pinter Memorials and Pinter Memorials, as alleged herein, have misappropriated and/or acquired all of the foregoing without any consideration, and under circumstances where it would be highly inequitable for Pinter and Pinter Memorials to retain these valuable benefits.

92.    Pinter and Pinter Memorials were unjustly enriched by their inequitable and wrongful conduct.

93.    McKinney, derivatively on behalf of Primus Enterprise, demands that all of the foregoing, and all business of Pinter and Pinter Memorials, and all profits derived from the foregoing, be subject to a constructive trust for the benefit of Primus Enterprise.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Thomas Pinter and Pinter Memorials in an amount in excess of the jurisdictional limit of $75,000, together fashioned as a constructive trust for the benefit of Plaintiffs over the business interests and profits of Thomas Pinter and Pinter Memorials, with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

## COUNT VIII
## BREACH OF CONTRACT
### McKinney, derivatively v. VetsUSA

94.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

95.    On April 24, 2018 VetsUSA entered into a contract with Primus Enterprise for Primus Enterprise to provide it with gravestones cut to specification.

96.     VetsUSA and Primus Enterprise agreed to a price per gravestone of $210.

97.     Further, VetsUSA issued purchase orders to Primus Enterprise for said gravestones, with expected gravestone orders and profit to be:

| Period | No. of Stones | Profit |
|---|---|---|
| 4/1/2018-9/30/2018 | 14,460 | $1,184,274 |
| 10/1/2018-9/30/2019 | 20,240 | $1,657,656 |
| 10/1/2019-9/30/2020 | 21,260 | $1,741,194 |
| 10/1/2020-9/30/2021 | 23,330 | $1,910,727 |
| 10/1/2021-9/30/2022 | 25,030 | $2,099,957 |
| **TOTAL** | | $8,543,808 |

98.     VetsUSA breached its contract by ceasing to place orders with, ceasing to do business with, and diverting it contracts, order and business to others, and not to Primus Enterprise.

99.     VetsUSA's breach of contract caused damages to Primus Enterprise as alleged herein.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Pinter in an amount in excess of $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

## COUNT IX
## BREACH OF IMPLIED IN FACT CONTRACT – ALTERNATIVE COUNT
### McKinney, derivatively v. VetsUSA

100.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

1179663-1

101.    On April 24, 2017, VetsUSA and Primus Enterprise entered into an agreement that Primus Enterprise would be the provider of gravestones cut to specification for VetsUSA.

102.    VetsUSA issued purchase orders to Primus Enterprise for said gravestones.

103.    VetsUSA and Primus Enterprise have performed under this agreement, with Primus Enterprise providing gravestones to VetsUSA, as provided for herein.

104.    VetsUSA and Primus Enterprise agreed to a price per gravestone of $210.

105.    VetsUSA breached its implied in fact contract with Primus Enterprise by purchasing gravestones cut to specification from third parties, and not from Primus Enterprise.

106.    VetsUSA's breach of contract this implied in fact caused damages to Primus Enterprise as alleged herein.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Pinter in an amount in excess of $75,000, together with interest, punitive damages, attorney fees and costs, and all such other relief as the Court deems just and proper.

**COUNT X**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**McKinney, individually and derivatively vs. Worthington**

107.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

108.    As alleged herein, Pinter owed and breached the fiduciary duties to McKinney and Primus Enterprise arising out of their equal 50% ownership of Primus Enterprise and being, both, the only two equal members and equal managers of Primus Enterprise.

109.    At all times material hereto, Worthington was aware of the duties owed by Pinter to McKinney and Primus Enterprise and Pinter's breaches of those duties.

1179663-1

110.    At all times material hereto, Worthington provided substantial assistance and/or encouragement to Pinter in breaching his fiduciary duties, by, without limitation, as a principal of VetsUSA, transferring, or promising to transfer, existing and/or future gravestone contracts and/or purchase orders from Primus Enterprise to Pinter, Pinter Memorials, and/or another entity owned or operated by Pinter, or from which Pinter obtains pecuniary gain.

**WHEREFORE**, Stephen McKinney, individually and derivatively on behalf of Primus Enterprise, LLC,  respectfully requests judgment in his favor and against Stephen Worthington in an amount in excess of the jurisdictional limit of $75,000, together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

## COUNT XI
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
#### McKinney, individually and derivatively vs. VetsUSA

111.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

112.    As alleged herein, Pinter owed and breached the fiduciary duties to McKinney and Primus Enterprise arising out of their equal 50% ownership of Primus Enterprise and being, both, the only two equal members and equal managers of Primus Enterprise.

113.    At all times material hereto, VetsUSA was aware of the duties owed by Pinter to McKinney and Primus Enterprise and Pinter's breaches of those duties.

114.    At all times material hereto, VetsUSA provided substantial assistance and/or encouragement to Pinter in breaching his fiduciary duties, by, without limitation, transferring, or promising to transfer, existing and/or future gravestone contracts and/or purchase orders from Primus Enterprise to Pinter, Pinter Memorials, and/or another entity owned or operated by Pinter, or from which Pinter obtains pecuniary gain.

1179663-1

**WHEREFORE**, Stephen McKinney, individually and derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against VetsUSA in an amount in in excess of the jurisdictional limit of $75,000, together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

**COUNT XII**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**McKinney, individually and derivatively vs. Pinter in his capacity as an officer of Pinter Memorials and Pinter Memorials**

115.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

116.    As alleged herein, Pinter owed and breached the fiduciary duties to McKinney and Primus Enterprise arising out of their equal 50% ownership of Primus Enterprise and being, both, the only two equal members and equal managers of Primus Enterprise.

117.    At all times material hereto, Pinter Memorials was aware of the duties owed by Pinter to McKinney and Primus Enterprise and Pinter's breaches of those duties.

118.    At all times material hereto, Pinter Memorials provided substantial assistance and/or encouragement to Pinter in breaching his fiduciary duties, by, without limitation, transferring, or promising to transfer, existing and/or future gravestone contracts and/or purchase orders from Primus Enterprise to Pinter, Pinter Memorials, and/or another entity owned or operated by Pinter, or from which Pinter obtains pecuniary gain.

119.    Pinter directly participated in the aforementioned tortious conduct as an officer and the principal of Pinter Memorials.

**WHEREFORE**, Plaintiff Stephen McKinney, individually and derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Defendants Thomas Pinter and Pinter Memorials in an amount in excess of the jurisdictional limit of

24

$75,000, together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

## COUNT XIII
## VIOLATION OF THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### McKinney, individually and derivatively v. Pinter and Pinter Memorials

120.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

121.    McKinney created a unique proprietary Fabrication Processes for Primus Enterprise which are trade secrets of Primus Enterprise as defined in the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 et seq.

122.    Primus Enterprise's Fabrication Processes is a valuable process: which

a.      is significantly automated over past methods;

b.      is faster than the typical processes in place for gravestone production over the past 80 years;

c.      allows for production at a pace in excess of two to three times standard production methods;

d.      minimizes exertion by laborers;

e.      minimizes damage to product, specifically to the stone from its existence as a raw material through to the completion of the gravestone;

f.      McKinney developed for the benefit of Primus Enterprise;

g.      is known only to McKinney, Pinter, and Primus Enterprise and is not known to the competitors of Primus Enterprise; and

h.      Provided a competitive advantage to Primus Enterprise over its competitors.

123.    Primus Enterprise has the right to use and enjoy the Fabrication Processes as it was created by McKinney for Primus Enterprise.

124.    The Fabrication Processes was disclosed to Pinter as a member of Primus Enterprise but Pinter then took the process and implemented it with his own company Pinter Memorials, or other entities owned and/or controlled by him.

125.    Based on information and belief Pinter and Pinter Memorials are using the aforementioned trade secretes for their own uses and pecuniary gain.

126.    Based on information and belief Pinter and Pinter Memorials use of McKinney's and Primus Enterprise's confidential information has caused and will continue to cause immediate and irreparable harm for which there is no adequate remedy at law.

127.    Said wrongful acts will continue unless enjoined.

128.    Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

**WHEREFORE**, Stephen McKinney, individually and derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Defendant Thomas Pinter and Pinter Memorials in an amount in excess of $75,000, together with interest, costs of suit, an injection against the further use and dissemination of Primus Enterprise trade secrets, and any other relief as this Court deems just and proper.

**COUNT XIV**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT**
**McKinney, individually and derivatively v. Pinter and Pinter Memorials**

129.    Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

1179663-1

130.     McKinney created a unique proprietary Fabrication Processes for Primus Enterprise which are trade secrets of Primus Enterprise as defined in the Defend Trade Secrets Act, 18 U.S.C. § 1839 et seq.

131.     The Fabrication Processes was disclosed to Pinter as a member of Primus Enterprise, but Pinter then took the process and implemented it with his own company Pinter Memorials, or other entities owned and/or controlled by him.

132.     Based on information and belief Pinter and Pinter Memorials are using the aforementioned trade secretes for their own uses and pecuniary gain.

133.     Based on information and belief Pinter and Pinter Memorials use of McKinney's and Primus Enterprise's confidential information has caused and will continue to cause immediate and irreparable harm for which there is no adequate remedy at law.

134.     Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

**WHEREFORE**, Stephen McKinney, individually and derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against Defendant Thomas Pinter and Pinter Memorials in an amount in excess of $75,000, together with interest, costs of suit, and any other relief as this Court deems just and proper.

### COUNT XV
### UNFAIR COMPETITION
**McKinney, derivatively v. Worthington, VetsUSA and Pinter Memorials**

135.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

136.     Worthington, VetsUSA and Pinter Memorials, as alleged herein, engaged in unfair methods of competition, including but not limited to:

1179663-1

     a.     improper inducement to breach fiduciary duties of Pinter, Chief Operating Officer and 50% member, manager and owner, of Primus Enterprise;

     b.     the unlawful use of confidential information, including the Fabrication Processes, business information and records of Primus Enterprise, information about the operations, suppliers, vendors, labor, facilities, machinery, financial condition, profitability, and the like, as it relates to Primus Enterprise; and

     c.     such other conduct as alleged herein and/or which may be discovered during the litigation of this matter, which constitutes unfair competition.

137.     The unfair methods of competition employed by Worthington, VetsUSA, and Pinter Memorials sought to shut down, harm, and drive Primus Enterprise out of business, and/or drive it into dissolution.

138.     The unfair methods of competition employed by Worthington, VetsUSA, and Pinter Memorials against Primus Enterprise caused damages to Primus Enterprise as alleged herein.

**WHEREFORE**, Stephen McKinney, derivatively on behalf of Primus Enterprise, LLC, respectfully requests judgment in his favor and against VetsUSA, Pinter Memorials and Stephen Worthington in an amount in in excess of the jurisdictional limit of $75,000, together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

### COUNT XVI
### BREACH OF CONTRACT
### McKinney, individually v. Pinter Memorials

139.     Plaintiff incorporates herein by reference each and every of the foregoing allegations as though fully set forth herein.

140.    McKinney and Pinter Memorials reached an agreement that, in connection with the sandblasting of gravestones by Pinter Memorials as ordered by VetsUSA, that McKinney and Pinter Memorials would divide the fees paid to Pinter Memorials.

141.    Initially, the agreed fee division provided for McKinney to receive payment of $12 per gravestone.

142.    Subsequently, after further assessment by McKinney and Pinter Memorials, the parties agreed to modify the fee to be received by McKinney per sandblasted gravestone.

143.    Under the modified agreement, Pinter Memorials agreed to pay McKinney $15 per gravestone sandblasted under orders placed by VetsUSA ("Fee-Split Agreement").

144.    As of August 24, 2018, 6,600 gravestones were processed and subject to this Fee-Split Agreement.

145.    The business plan of Primus Enterprise and the orders placed, or to be placed by VetsUSA with Primus Enterprise, provided that the following number of gravestones would be processed during the applicable period set out below:

| Period | No. of Stones | Amount Due McKinney |
|---|---|---|
| 4/1/2018-9/30/2018 | 14,460 x $15 = | $  216,900 |
| 10/1/2018-9/30/2019 | 20,240 x $15 = | $  303,600 |
| 10/1/2019-9/30/2020 | 21,260 x $15 = | $  318,900 |
| 10/1/2020-9/30/2021 | 23,330 x $15 = | $  349,950 |
| 10/1/2021-9/30/2022 | 25,030 x $15 = | $   375,450 |
| | TOTAL = | $1,564,800 |

146.    Despite demand, Pinter Memorials has and continues to refuse to pay over the amounts due under the Fee-Split Agreement, and is in breach.

1179663-1

147.    As of September 1, 2018, Pinter Memorials owed McKinney not less than $99,000 for not less than 6,600 gravestones at $15 per stone.

148.    Total damages suffered by Pinter Memorials' breach of the Fee-Split Agreement based upon expected and predicted orders exceeds $1,500,000.

149.    A further basis for Pinter breaching his fiduciary duties owed to both McKinney and Primus Enterprise, all as alleged herein, is Pinter's desire to not honor, and to breach, and to fully avoid any and all performance whatsoever, of the Fee-Split Agreement.

**WHEREFORE**, Stephen McKinney, individually, respectfully requests judgment in his favor and against Pinter Memorials in an amount in in excess of the jurisdictional limit of $75,000, together with interest, attorney fees and costs, and all such other relief as the Court deems just and proper.

TIMONEY KNOX, LLP

By: _____

Eric B. Smith, Esquire
(PA ID No. 81023)
Counsel for Plaintiffs
Stephen McKinney, individually and
derivatively on behalf of
Primus Enterprise, LLC

400 Maryland Drive
P.O. Box 7544
Fort Washington, PA 19034-7544
Direct Dial: 215-540-2653
Fax: 215-591-8256
esmith@timoneyknox.com

Date: September 28, 2018

1179663-1