**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN MCKINNEY, INDIVIDUALLY AND DERIVATIVELY, ON BEHALF OF PRIMUS ENTERPRISE, LLC, Plaintiffs, | : : : : : | CIVIL ACTION |
| v. | : : | |
| THOMAS PINTER, et al., Defendants. | : : | No. 18-4185 |

**MEMORANDUM**

**Schiller, J.**                                                                           February 26, 2019

Plaintiff Stephen McKinney, Defendant Thomas Pinter, and Defendant Stephen Worthington operated gravestone businesses together. But now the arrangement is buried in argument. McKinney, individually and derivatively on behalf of Primus Enterprise, LLC, brings sixteen claims against Pinter, Worthington, and their affiliated companies, Pinter Memorials, Inc., and VetsUSA II, Inc.[1] McKinney's claims include misappropriation of trade secrets under the Defend Trade Secrets Act and the Pennsylvania Uniform Trade Secrets Act, as well as numerous state law tort and contract claims.

Defendants move to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. Alternatively, Defendants seek to transfer pursuant to 28 U.S.C. §§ 1404 or 1406. Because the parties established business operations at an Alabama quarry, where most of the alleged wrongful acts occurred, and for the reasons that follow, the Court concludes that fairness and convenience favor transfer. Therefore, the Court need not decide whether it lacks personal

---

[1] McKinney alleges that Worthington owns VetsUSA II, Inc., and VetsUSA, LLC. (McKinney Decl. ¶ 11, Dec. 14, 2018 [McKinney Decl.].) Worthington asserts that VetsUSA, LLC, is a separate entity with different ownership and bank accounts. (Worthington Aff. ¶¶ 11-14, Feb. 8, 2019.) Unless stated otherwise, "VetsUSA" in this decision means the party, VetsUSA II, Inc.

jurisdiction over Worthington and VetsUSA, or whether McKinney fails to state claims upon which relief can be granted.

## I. BACKGROUND

McKinney, Pinter, and Worthington are business partners from Pennsylvania, Florida, and Virginia, respectively, who allegedly agreed to manufacture, engrave, and distribute gravestones. The gravestone businesses involved roughly three arrangements: First, McKinney and Pinter manufactured gravestones through a jointly owned limited liability company, Primus. Second, Pinter Memorials, a company associated with Pinter, inscribed the gravestones. Third, VetsUSA, a company associated with Worthington, distributed the gravestones to the United States Department of Veterans Affairs, National Cemetery Association ("Veterans Affairs").

In 2013, McKinney purchased Wenzco Supplies, LLC. (McKinney Decl. ¶¶ 5, 7.) Pinter was a customer of Wenzco when McKinney purchased it. (*Id.* ¶ 7.) Business relationships with McKinney and Worthington began as early as 2014 and "grew through [Pinter], who acted as a liaison between" McKinney, Worthington, and Worthington's companies. (*Id.* ¶¶ 11-13.)

The present business arrangement began in June 2017, when Stanton Grubb, an employee of VetsUSA, LLC, inquired about McKinney's ability to supply materials for anticipated contracts with the federal government. (Am. Compl. ¶ 24.) Grubb's inquiry prompted follow-up meetings. Grubb traveled to Pennsylvania in July 2017 to meet with McKinney and Pinter, and to inspect facilities owned by Wenzco. (*Id.* ¶¶ 25-26; McKinney Decl. ¶¶ 5, 15.) Two months later, McKinney and Pinter visited a facility in Bessemer, Alabama, that Worthington hoped to use in connection with a federal gravestone contract. (Am. Compl. ¶ 27.)

After the meetings, the parties decided to pursue a set-aside contract with Veterans Affairs (the "VA Contract"). (*Id.* ¶¶ 28-29.) Worthington requested that Pinter solicit help from McKinney to assemble a bid. (*Id.* ¶ 28.) Pinter did so in November 2017, when he met with McKinney in

2

Pennsylvania. (*Id.* ¶ 32.) McKinney agreed to help Worthington prepare a bid for the five-year VA Contract valued at $36,391,870. (*Id.* ¶ 28.) To submit the bid and perform the contract, if awarded, Worthington established VetsUSA in December 2017. (*Id.* ¶ 30.)

McKinney helped prepare the bid by evaluating competition; evaluating and soliciting equipment manufacturers and suppliers for raw materials; creating a logistics strategy; and reviewing and analyzing all costs, income, and other numbers for the contract execution. (*Id.* ¶ 35.) He also developed a specialized fabrication process, because the parties agreed to subcontract gravestone production to McKinney or an entity in which he had an ownership interest. (*Id.* ¶ 37.) McKinney worked for four hours every day, primarily from Pennsylvania, until March 2018, when Veterans Affairs awarded the VA Contract to VetsUSA. (*Id.* ¶ 39; McKinney Decl. ¶ 29.) After VetsUSA secured the VA contract in late March or early April 2018, Worthington recognized that "but for McKinney's involvement . . . VetsUSA would not have obtained it." (Am. Compl. ¶ 40.)

Once VetsUSA secured the VA Contract, McKinney and Pinter started developing plans as the prospective suppliers. (*Id.* ¶ 36.) McKinney and Pinter consulted a professional in Blue Bell, Pennsylvania, about forming Primus to fabricate blank gravestones. (*Id.* ¶¶ 42-43.) At the consultant's direction, McKinney and Pinter formed Primus, a Delaware limited liability company. (McKinney Decl. ¶ 38.) All formation paperwork was prepared in Pennsylvania; some of the papers were executed in Pennsylvania. (*Id.* ¶¶ 39-40.)

McKinney and Pinter formed an oral operating agreement to govern Primus. (Am. Compl. ¶ 46.) Among other things, it provided that Primus begin work at the plant in Bessemer, Alabama, operated by JB Processing, LLC. (*Id.* ¶ 47(b); McKinney Decl. ¶ 50.) However, McKinney and Pinter expected to move operations to Pennsylvania around October 2018 because the Alabama

marble quarry was not suitable for the VA Contract's needs. (Am. Compl. ¶ 47(b); McKinney Decl. ¶¶ 52-53.)

When operations commenced in April 2018, McKinney lived in a hotel room near the Alabama plant. (McKinney Decl. ¶¶ 57-58.) By June 2018, McKinney and Pinter signed year-long leases for apartments in Alabama. (*Id.* ¶ 58; Pinter Decl. ¶ 4, Jan. 10, 2019.) Although Worthington did not move to Alabama, he visited the plant on two occasions. (Pinter Decl. ¶ 8, Jan. 10, 2019.)

McKinney maintained his permanent address in Pennsylvania, returned to Pennsylvania weekly or biweekly, and, at least once, delivered supplies to Pinter from Pennsylvania. (McKinney Decl. ¶¶ 59-60, 62.) Moreover, Wenzco shipped materials from Pennsylvania to Alabama for the VA Contract, and two Wenzco employees traveled from Pennsylvania to Alabama to provide Primus with temporary labor for the VA Contract. (*Id.* ¶¶ 63, 83.)

By the end of summer, relationships soured. When McKinney returned from traveling internationally on Primus business, he received emails that effectively removed him from business operations. Specifically, Pinter emailed McKinney on August 12, 2018, stating an intent to dissolve their business relationships; the August 12 email copied an employee from JB Processing. (Am. Compl. ¶¶ 70-71.) Ten minutes later, the JB Processing employee emailed McKinney, banning him from the Alabama plant. (McKinney Decl. ¶ 88.) Almost two weeks later, Pinter copied McKinney on an email to Worthington, stating that Pinter had formed a new business to manufacture gravestones and offering to provide gravestones to VetsUSA. (*Id.* ¶ 89.)

McKinney alleges that, after Pinter froze him out, Pinter mismanaged Primus by operating at less than capacity, diverting resources, and depleting assets. (Am. Compl. ¶ 77.) As a result, McKinney claims that Defendants stole, among other things, "trade secrets . . . , know-how, consumer lists, and contracts." (*Id.* ¶ 78.)

## II.   STANDARD OF REVIEW

Improper venue may be asserted pursuant to Federal Rule of Civil Procedure 12(b)(3). "[W]hen deciding a Rule 12(b)(3) motion to dismiss for improper venue, a court must accept as true the allegations in the complaint, although the parties may submit affidavits to support their positions." *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008). It is the defendant's burden, when moving to dismiss based on improper venue, to establish that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("[P]laintiff's choice of a proper forum . . . should not be lightly disturbed.").

An action may be transferred, rather than dismissed, to a district where it might have been initially brought. If venue is improper, the district court "shall . . . if it be in the interest of justice, transfer" the lawsuit to an appropriate district. § 1406(a). Even if venue is proper, the district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." § 1404(a). "Under either § 1404(a) or § 1406(a), the burden is on the moving party to establish that the transfer is warranted." *Collins v. Garman*, Civ. A. No. 07-2370, 2007 WL 2740297, at *2 (E.D. Pa. Sept. 19, 2007).

## III.   DISCUSSION

The Court is faced with motions to dismiss on several bases. Defendants Worthington and VetsUSA move to dismiss for lack of personal jurisdiction and failure to state claims for which relief can be granted. Defendants Pinter and Pinter Memorials move to dismiss or transfer for improper venue, or to transfer for convenience and fairness.

Here, the Court need not decide whether it has personal jurisdiction over Worthington and VetsUSA because the entire case should be transferred under § 1404(a). Venue is proper over McKinney's claims against Pinter and Pinter Memorials because the trade secrets at issue

5

originated in Pennsylvania. Nonetheless, convenience and fairness clearly favor transfer to the Northern District of Alabama.

### A. Neither Dismissal nor Transfer is Appropriate Under § 1406 Because Venue is Proper

Venue for the claims against Pinter and Pinter Memorials is proper in the Eastern District of Pennsylvania. McKinney asserts a federal trade secret claim against Pinter and Pinter Memorials based on a specialized gravestone fabrication process that originated in Pennsylvania. Pendent venue is appropriate for his other claims against Pinter and Pinter Memorials because they arise out of the same nucleus of operative facts: excluding McKinney from the gravestone operations that use the fabrication process.

Venue is governed by 28 U.S.C. § 1391. As relevant here, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." § 1391(b)(2). Venue is determined by the location of events, omissions, or property rather than the defendant's contacts with a particular district. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). "[V]enue can be appropriate in more than one district." *Leone*, 574 F. Supp. 2d at 483. In other words, a district with substantial events or omissions is not rendered improper because another district has more, or even the most, substantial events or omissions. *Id.*

To determine whether venue is proper, "it is necessary to look at the nature of the dispute." *Cottman*, 36 F.3d at 295; *see also Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (explaining that courts look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim"). Venue must generally be established for each claim in the complaint, but an exception applies where the claims arise out of the same operative facts. *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005).

This case involves the misappropriation of trade secrets, as well as tort and contract claims. Trade secrets are property under § 1391(b)(2). *See SMA Med. Labs. v. Advanced Clinical Lab. Sols., Inc.*, Civ. A. No. 17-3777, 2018 WL 3388325, at *3 (E.D. Pa. July 12, 2018) (rejecting defendants' argument that intellectual property should be distinguished from other types of property). "The relevant inquiry is therefore: where is a trade secret 'situated?'" *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, Civ. A. No. 16-3103, 2017 WL 714043, at *9 (E.D. Pa. Feb. 23, 2017). In the Third Circuit, the "the 'situs' of a trade secret is the state in which the intellectual property was created" and that "can be enough to establish proper venue." *Id.* The state of injury, though generally insufficient to establish venue, is also relevant for intellectual property claims. *Id.*

Here, McKinney alleges that he created and developed a trade secret in Pennsylvania. Specifically, McKinney alleges that he developed a significantly automated, specialized, fabrication process for the parties' anticipated gravestone production. Based on the facts alleged, the Court finds that the process originated in Pennsylvania. Although McKinney implemented the process in Alabama, he designed the process before beginning work at the Alabama plant, when he lived in Pennsylvania. Even if some development occurred elsewhere, venue in Pennsylvania is "further bolstered because [McKinney's] injury is felt there." *Id.* He also alleges that the fabrication process employs equipment manufactured and sold by his other company, Wenzco. Therefore, when the Defendants allegedly misused McKinney's fabrication process, they effectively misappropriated the secret from the Eastern District of Pennsylvania.

Because venue is established for McKinney's trade secret claims, the Court may apply pendent venue over the appended state law claims. *See id.* at *10 n.11 (exercising pendent venue over entire case because venue was proper over the trade secret claims and the other claims arose

7

from the same operative facts). All of McKinney's claims arise out of the same operative facts: the formation and operation of businesses to manufacture and supply gravestones for the federal government. Thus, venue is also proper for the closely related state law claims.

### B. Transfer is Warranted Under § 1404 and the *Jumara* Factors

Although venue is proper in the Eastern District of Pennsylvania, convenience and fairness favor transfer to the Northern District of Alabama. Under § 1404(a), district courts are vested "with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

When ruling on a motion to transfer, a court faces two inquiries. First, it must determine whether the litigation "might have been brought" in the proposed transferee district. *Van Dusen*, 376 U.S. at 616. An action might have been brought in a district if: (1) venue is proper in the transferee district; and (2) the transferee district can exercise jurisdiction over all defendants. *See Shutte*, 431 F.2d at 24. Second, if the first inquiry is satisfied, the court must weigh private and public factors to determine whether fairness and convenience warrant transfer. *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284-85 (E.D. Pa. 2001). A court ruling on a motion to transfer should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. Courts in this district consider the public and private factors set forth in *Jumara*.

Here, McKinney might have brought this case in the Northern District of Alabama, where the parties established operations and the central events and omissions occurred. Moreover, as

explained below, public and private factors weigh in favor of transfer to the Northern District of Alabama.

### 1. The Case Might Have Been Brought in the Northern District of Alabama

None of the parties have argued that venue is improper or personal jurisdiction cannot be exercised in the Northern District of Alabama. Without conceding that certain facts occurred in Alabama, McKinney instead argues that transfer is not warranted. The Defend Trade Secrets Act "does not have a special federal rule for personal jurisdiction." *See Mitek Corp. v. Diedrich*, Civ. A. No. 18-1453, 2018 WL 5078385, at *2 (N.D. Ill. Oct. 18, 2018) (determining that personal jurisdiction must be authorized by the forum state's long-arm statute). "Alabama's long-arm statute permits personal jurisdiction to the extent it 'is not inconsistent with the [Alabama constitution] or the Constitution of the United States.'" *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1302 (N.D. Ala. 2016) (quoting Ala. R. Civ. P. 4.2(b)).

McKinney, Pinter, Worthington, and their respective businesses established operations in Alabama for the federal gravestone contract. In fact, the Alabama plant continues to operate without McKinney. The trips to Alabama and the operations in Alabama establish minimum contacts, and the assertion of personal jurisdiction is fair and reasonable. Venue in Alabama is also proper because the central event—banning McKinney from business operations that use his trade secret—occurred at the Alabama facility. Thus, McKinney might have brought his claim in the Northern District of Alabama.

### 2. Private Interest Factors Favor Transfer

Private interests include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and

records to the extent such files cannot be produced in the alternative forum. *Jumara*, 55 F.3d at 879.

Because McKinney filed his complaint in the Eastern District of Pennsylvania, the first private interest factor, the plaintiff's forum preference, weighs against transfer. *See Shutte*, 431 F.2d at 25 (explaining that plaintiff's choice of a proper forum is a "paramount consideration"). McKinney's choice, however, is entitled to less deference because most of the operative facts occurred in Alabama. *See Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013).

The second private interest factor, the defendant's preference, favors transfer. Pinter and Pinter Memorials move to transfer. Worthington and VetsUSA did not contest venue. But they also did not consent to personal jurisdiction in the Eastern District of Pennsylvania or oppose the motion by Pinter and Pinter Memorials to transfer. Therefore, the Court finds that this factor favors transfer.

Whether the claim arose elsewhere, the third private interest factor, strongly favors transfer because the claims arose primarily in Alabama. Regardless of any party's expectation to perform future operations in Pennsylvania, they selected an Alabama plant as the primary work site during the relevant time period. To work at the site, McKinney and Pinter even moved to Alabama. The alleged misconduct—"freezing out" McKinney—occurred in Alabama. Indeed, Defendants misappropriated trade secrets and excluded McKinney from business operations by banning McKinney from the Alabama plant.

The fourth private interest factor, the convenience of the parties, is neutral. McKinney, Pinter, Worthington are from different states, so litigation will necessarily impose physical and financial inconvenience to some of the parties. Nothing demonstrates that a party is unable to travel, however. McKinney is certainly capable of travel: he returned to Pennsylvania weekly or

biweekly when he lived in Alabama. Pinter is also capable of travel: he inspected McKinney's Wenzco facility in Pennsylvania during the initial meetings.

The fifth private interest factor, the availability of witnesses, favors transfer. "Actual unavailability in this context means outside the subpoena power of the forum, such that testimony from the witness would be restricted to deposition or video testimony." *Lehr v. Stryker Corp.*, Civ. A. No. 09-2989, 2010 WL 3069633, at *5 n.7 (E.D. Pa. Aug. 4, 2010). However, the convenience and availability of "[p]arty witnesses or witnesses who are employed by a party carry no weight . . . since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998); *see also Kiker v. SmithKline Beecham Corp.*, Civ. A. No. 14-1445, 2014 WL 4948624, at *7 (E.D. Pa. Oct. 1, 2014). Both sides assert that witnesses will be beyond the final court's subpoena power. Both sides also propose witnesses that might be categorized as party employees. At least four of McKinney's six proposed witnesses might be categorized as party employees. Two witnesses are individuals that McKinney asserts managed Primus' financial operations. (*But see* Pinter Decl. ¶ 5, Jan. 10, 2019 (asserting that "neither were Primus' employees or on Primus' payroll").) Another two witnesses are employed by McKinney's other business, Wenzco, and performed work in Alabama for Primus. Several witnesses for Defendants will also be party employees. However, the Court recognizes that JB Processing, the plant's operator, is not a party. Because JB Processing's employees are beyond this Court's subpoena power and possess critical first-hand knowledge of the events giving rise to the lawsuit, the Court finds that this factor favors transfer.

Finally, the Court finds that transfer to Alabama is favored because the equipment for the secret fabrication process was shipped and installed there. Whether equipment or materials are classified as books and records makes no difference. *See Jumara*, 55 F.3d at 879 ("[T]here is no

11

definitive formula or list of the factors to consider."). If the equipment or materials is needed at trial, moving them from one location to another would present greater difficulty than electronic files.

### 3. *Public Interest Factors Favor Transfer*

Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80.

The first public interest factor is neutral. Either party could enforce a judgment entered by the Eastern District of Pennsylvania or the Northern District of Alabama.

Practical considerations, the second public interest factor, favor transfer. All of McKinney's claims arise from the same operative facts and belong together. Given Worthington and VetsUSA's argument against this Court's personal jurisdiction, and the possibility that two similar cases would proceed simultaneously in different regions, transfer is favored. *See Transcore, L.P. v. Mark IV Indus. Corp.*, Civ. A. No. 09-2789, 2009 WL 3365870, at *8 n.10 (E.D. Pa. Oct. 15, 2009) (finding that uncertainty whether the court "could exercise specific jurisdiction over *all* of the [related entities]" favored transfer).

The third public interest factor, the relative court congestion, is neutral. Judicial caseload statistics do not demonstrate considerable differences between the two districts. The difference between the total filings per judgeship in the Eastern District of Pennsylvania and the Northern District of Alabama is seventeen, and the difference between the time from filing to disposition in civil cases is less than five months. (Pls.' Pinter Br. at Ex. H.) Moreover, the relative docket

congestion is not a matter of great weight. *Madrazo v. Welcome Hotel Grp.*, Civ. A. No. 18-0427, 2018 WL 1942369, at *5 (E.D. Pa. Apr. 25, 2018).

The fourth and fifth public interest factors, local interests and public policies, are neutral. On the one hand, the case involves the freeze-out of a Pennsylvania resident from his business, and the misappropriation of an alleged trade secret with a Pennsylvania situs. On the other hand, the dispute cannot be properly characterized as "local" to the Eastern District of Pennsylvania because nearly all of the alleged culpable conduct occurred in Alabama. In other words, the fallout between three business partners from Pennsylvania, Florida, and Virginia, who established business operations in Alabama, is not of particular concern to Pennsylvania. Neither the Court nor the parties can identify a public policy in Pennsylvania or Alabama that will affect this case.

The sixth public interest factor, the familiarity of the trial judge with the applicable state law is also neutral. Either court is equipped to handle the federal trade secret claim, the basis for federal subject matter jurisdiction. As to the state law claims, it is not yet clear what law applies because many underlying facts are strongly disputed. The Court affords little weight to this factor since the applicable state law claims, sounding in tort and contract, are not complex. *See Cornish v. Morris Commc'ns Co.*, Civ. A. No. 08-6395, 2009 WL 3129387, at *4 (D.N.J. Sept. 28, 2009) ("When the area of law is not complex . . . the applicable state law is not given much weight in the transfer analysis."). Therefore, whatever state law applies, the Northern District of Alabama is more than capable of applying it. *See Palagano v. NVIDIA Corp.*, Civ. A. No. 15-1248, 2015 WL 5025469, at *7 (E.D. Pa. Aug. 25, 2015) (noting that district courts are "regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit").

    4. *The Balance of the* Jumara *Factors Weighs in Favor of Transfer*

Upon consideration of the *Jumara* factors, the Court determines that transfer to the Northern District of Alabama is warranted. On balance, both sets of factors, especially the private

factors, favor transfer. Accordingly, the litigation would proceed more conveniently and the interests of justice would be better served by transfer.

## IV. CONCLUSION

For these reasons, the Court will grant in part and deny in part Pinter and Pinter Memorials' motion. Pinter and Pinter Memorials' motion to transfer venue is granted. Therefore, Worthington and VetsUSA's motion is denied as moot. An appropriate Order will be docketed separately.