UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEVEN MCKINNEY,
INDIVIDUALLY AND
DERIVATIVELY ON BEHALF OF
PRIMUS ENTERPRISE, LLC,

    Plaintiff,

v.

THOMAS PINTER, et al.,

    Defendants.

Case No.: 2:19-cv-503-ACA

## **MEMORANDUM OPINION AND ORDER**

Before the court is the motion to dismiss the amended complaint (doc. 64), filed by Defendants VetsUSA II, Inc. ("VetsUSA") and Stephen Worthington.

Plaintiff Stephen McKinney and Defendants Thomas Pinter and Mr. Worthington were business partners in a gravestone business until Mr. Pinter and Mr. Worthington stopped working with Mr. McKinney. Mr. McKinney, individually and derivatively on behalf of Primus Enterprise, LLC ("Primus"), brings a total of sixteen claims against Mr. Pinter, Mr. Worthington, and their respective companies, Pinter Memorials, Inc., ("Pinter Memorials") and VetsUSA. As relevant to this motion, Mr. McKinney alleges the following claims:

(1) tortious interference with existing and prospective contractual relationships against Mr. Pinter, Pinter Memorials, and Mr. Worthington ("Count Three");

(2) tortious interference with existing contractual relationships against Pinter Memorials, VetsUSA, and Mr. Worthington ("Count Four");

(3) breach of contract against VetsUSA ("Count Eight");

(4) breach of implied in fact contract against VetsUSA[1] ("Count Nine");

(5) aiding and abetting breach of fiduciary duty against Mr. Worthington ("Count Ten");[2]

(6) aiding and abetting breach of fiduciary duty against VetsUSA ("Count Eleven");

(7) unfair competition against Pinter Memorials, VetsUSA and Mr. Worthington ("Count Fifteen").

VetsUSA and Mr. Worthington (but not Mr. Pinter and Pinter Memorials) move this court to dismiss all claims asserted against them for failure to state a claim upon which relief can be granted. The court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. The court **GRANTS** the motion to dismiss Counts Three and Four as to Mr. Worthington. However, under the lenient standard applicable to a motion to dismiss, Mr. McKinney has alleged sufficient facts to state plausible claims in the remaining counts. Accordingly, the court **DENIES** the

---

[1] Although Mr. McKinney requests judgment "against Pinter" under this claim, it is clear that this claim is brought against VetsUSA. (*See* Doc. 14 at 34, 37).

[2] Mr. McKinney also brings a claim of breach of fiduciary duty against Mr. Pinter ("Count One") and a claim of aiding and abetting breach of fiduciary duty against Mr. Pinter and Pinter Memorials ("Count Twelve").

2

motion to dismiss Count Four as to VetsUSA, as well as Counts Eight, Nine, Ten, Eleven, and Fifteen.

I. **BACKGROUND**

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.,* 685 F. 3d 1261, 1265 (11th Cir. 2012). Mr. McKinney attached several exhibits to the amended complaint (*see* docs. 14-1–14-21), the contents of which the court also includes in its description of the facts. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

In November 2017, Mr. McKinney, Mr. Pinter, and Mr. Worthington began assembling a bid for a contract to supply gravestones for the Department of Veterans Affairs (the "VA Contract"). (Doc. 14 at 5–6 ¶ 28–29). The parties understood that Mr. Worthington and/or an entity owned by Mr. Worthington would submit the bid to Veterans Affairs. Shortly after the parties began work on the bid, Mr. Worthington established VetsUSA for the purposes of submitting the bid and performing the VA contract, if awarded. (*Id.* at 6 ¶ 30).

While waiting for Veterans Affairs to award the bid, Mr. McKinney began developing a specialized fabrication process for the gravestones. (Doc. 14 at 6–7 ¶¶ 34, 37). On March 29, 2018, Veterans Affairs awarded the contract to VetsUSA. (*Id.* at 7 ¶ 39). A week later, Mr. McKinney and Mr. Pinter formed Primus, a

separate entity owned equally by Mr. McKinney and Mr. Pinter and established for the purpose of contracting with VetsUSA. (Doc. 14 at 8 ¶¶ 42–43).

Mr. McKinney and Mr. Pinter entered into an oral operating agreement outlining their roles and business plan for Primus. (Doc. 14 at 8 ¶¶ 46–47). Mr. McKinney and Mr. Pinter agreed to be sole and equal managers and members of Primus. (*Id.* ¶ 47(a)). The agreement provided that Primus would start work at a plant in Bessemer, Alabama operated by JB Processing, LLC (doc. 14 at 8, 10 ¶¶ 47(b), 55), with the possibility of moving operations to Pennsylvania in October 2018 if favorable lease terms could not be negotiated with JB Processing, LLC (*id.* at 8 ¶ 47(b)). The agreement also set out Primus's debt repayment schedule and profit distributions and growth plans. (*Id.* ¶ 47(c)–(e)).

Primus began manufacturing the gravestones in April 2018 using the fabrication process developed by Mr. McKinney. (*Id.* at 10–12 ¶¶ 54, 64–65). A few weeks later, VetsUSA sent a letter of intent to Primus "solidifying the agreement for the gravestones." (Doc. 14 at 10 ¶ 51; Doc. 14-5). Subsequent emails between the parties confirmed that Primus would be the supplier of the gravestones for the VA Contract. (*Id.* at 10 ¶¶ 52–53; *see* docs. 14-3–14-4, 14-11–14-13, 14-15– 14-16, 14-19–14-21). Primus began submitting invoices to VetsUSA in May 2018, which VetsUSA paid. (*Id.* at 11 ¶ 62; Doc. 14-6).

On August 12, 2018, Mr. Pinter emailed Mr. McKinney, stating that "it is best to dissolve our business relationship." (Doc. 14 at 13 ¶ 70; Doc. 14-8). Mr. Pinter copied the operator of the Bessemer, Alabama plant on this email. (*Id.* at 13 ¶ 71; Doc. 14-8). The operator then emailed Mr. McKinney, informing Mr. McKinney that he "will no longer be allowed to work on the premises." (*Id.* at 14 ¶ 74; Doc. 14-10).

Roughly two weeks later, Mr. Pinter emailed Mr. Worthington acknowledging the Bessemer processing plant had barred Mr. McKinney and Mr. Worthington's complaints that VetsUSA did not want to do business with Primus "due to Steve's behavior." (Doc. 14 at 13 ¶ 72; Doc. 14-9 at 2). Mr. Pinter informed Mr. Worthington that he was dissolving his relationship with Primus, had formed a new company to manufacture gravestones, and hoped that VetsUSA would use his new company. (*Id.*). Mr. Pinter copied Mr. McKinney on the email. (Doc. 14-9).

## II. DISCUSSION

VetsUSA and Mr. Worthington move to dismiss Counts Three, Four, Eight, Nine, Ten, Eleven, and Fifteen for failure to state a claim upon which relief can be granted. (Doc. 64 at 1). "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Breach of Contract & Breach of Implied in Fact Contract — Counts Eight & Nine

In Count Eight, Mr. McKinney alleges that the letter of intent dated April 26, 2018 created a contract between Primus and VetsUSA, which VetsUSA subsequently breached. (Doc. 14 at 10, 31-33 ¶¶ 51-52, 145–52).[3] In Count Nine, Mr. McKinney alleges that VetsUSA breached an implied in fact contract between Primus and VetsUSA based on the same general set of facts. (*Id.* at 34–37 ¶¶ 153–61). The court will address the claims together.

To state a claim for breach of contract under Pennsylvania law,[4] the plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of the duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225–226 (3d Cir. 2003) (quotation marks omitted). VetsUSA disputes only the existence of a legally enforceable contract between itself and Primus, arguing that the letter of intent contained "conditional language," indicating that it was not a final agreement. (Doc. 64-1 at 16–17).

---

[3] Mr. McKinney asserts the breach of contract claim derivatively on behalf of Primus.

[4] Mr. McKinney does not dispute Defendants' assertion that "Pennsylvania law governs both McKinney's contract and tort claims" (doc. 64-1 at 11) and refers to Pennsylvania law as "controlling" in his own brief (doc. 70 at 10). Accordingly, the court applies Pennsylvania law in its analysis of the claims.

"[I]t is a question of fact for the trier of fact to determine whether a contract exists." *Field v. Golden Triangle Broad., Inc.*, 305 A.2d 689, 691 (Pa. 1973). Although "evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract," *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986), "'it is well-settled in Pennsylvania that where the parties have settled upon the essential terms and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the present contract.'" *Field*, 305 A.2d at 693 (Pa. 1973) (quotation marks omitted).

In determining enforceability, "the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel,* 795 F.2d at 298–99 (citing *Lombardo v. Gasparini Excavating Co.,* 123 A.2d 663, 666 (Pa. 1956)). Once parties agree to essential terms with the intent to be binding, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date." *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.,* 739 A.2d 133, 136 (Pa. 1999) (quotation marks omitted).

Mr. McKinney's allegations, taken in the light most favorable to him, suffice to state a plausible claim that the letter of intent created an enforceable contract. The terms set out in the letter of intent were sufficiently definite with respect to the unit

7

price per headstone, quantity of headstones, the value of the services over the five-year contract term, as well as the quality and specific parameters of the headstones. (*See* Doc. 14-5 at 3–4). Moreover, the parties' actions after agreeing on the letter of intent could show an intention to be bound by the terms set out in the letter of intent, so that it was not conditional. (*See* Doc. 14 at ¶ 62; Doc. 14-4 at 2; Doc. 14-6). Because Mr. McKinney has alleged facts from which a fact finder could find the existence of a binding contract in fact, the court **DENIES** VetsUSA's motion to dismiss Counts Eight and Nine.

**B. Tortious Interference — Counts Three & Four**

Mr. Worthington and VetsUSA seek to dismiss: (1) Count Three (tortious interference with existing and prospective contractual relationships) which Mr. McKinney brings on behalf of Primus against Mr. Worthington; and (2) Count Four (tortious interference with existing contractual relationships) which Mr. McKinney brings on his own behalf against Mr. Worthington and VetsUSA. (Doc. 64; *see* Doc. 14 at 21–27, ¶¶ 104–128). In Count Three, Mr. McKinney alleges that Mr. Worthington interfered in the contract created by the letter of intent. (Doc. 14 at 21–26 ¶¶ 104–121). In Count Four, Mr. McKinney alleges that Mr. Worthington and VetsUSA interfered with the oral operating agreement between Mr. McKinney and Mr. Pinter. (*Id.* at 26–27 ¶¶ 122–128).

To establish a cause of action for intentional or tortious interference with an existing or prospective contractual relation, the plaintiff must show:

>  (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
>  (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
>  (3) the absence of privilege or justification on the part of the defendant; and
>
>  (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Strickland v. Univ. of Scranton,* 700 A.2d 979, 985 (Pa. Sup. Ct. 1997).

Mr. Worthington contends that as an officer of VetsUSA, as a matter of law, he cannot interfere with a contract to which VetsUSA is a party. (Doc. 64-1 at 21-22). "It is [ ] settled Pennsylvania law that corporations act only through its officers and agents, and that a party cannot be liable for tortious interference with a contract to which he is a party." *Michelson v. Exxon Research and Eng'g Co.,* 808 F.2d 1005, 1007–08 (3d Cir. 1987) (citation omitted). However, a corporate officer can be liable for tortious interference if he "was acting in a personal capacity or outside the scope of his authority." *Am. Trade Partners, L.P. v. A–1 Int'l Importing Enters., Ltd.,* 757 F. Supp. 545, 555 (E.D. Pa. 1991). Contrary to Mr. McKinney's argument, no allegation contained within the complaint hints that Mr. Worthington was acting in his personal capacity or that he acted outside the scope of his authority as President

9

of VetsUSA. (*See* Doc. 14 at 21–26 ¶¶ 104–121). Accordingly, Mr. Worthington cannot be liable for interfering with a contract to which VetsUSA is a party, and the court **GRANTS** the motion to dismiss as to Counts Three and Four as to Mr. Worthington.[5]

As to Count Four, as asserted against VetsUSA, Mr. Worthington and VetsUSA argue that Mr. McKinney's allegations do not establish that they knew of the details of the oral operating agreement between Mr. McKinney and Mr. Pinter and, therefore, Mr. McKinney cannot establish intent to harm an existing relationship. (Doc. 64-1 at 23–24).

As an initial matter, Mr. Worthington and VetsUSA have not presented any authority supporting their argument that they needed to know the details of the oral operating agreement in order to interfere in that agreement. Moreover, at this stage, Mr. McKinney's pleadings and the emails attached to his complaint suffice to plead a plausible tortious interference claim because, taken as true, they establish that Mr. Worthington knew that Mr. McKinney and Mr. Pinter had formed Primus for the purpose of fulfilling the VA Contract (*see* Doc. 14-4 at 1), and Mr. Worthington had complained to Mr. Pinter about not wanting to do business with Primus, prompting Mr. Pinter to dissolve his relationship with Primus and form a new

---

[5] Because the court grants dismissal of Count Three on this basis, the court does not address Mr. Worthington's "gist of the action" argument referenced in footnote 5 of its brief. (*See* Doc. 64-1 at 22, n.5).

10

company with which VetsUSA would work (doc. 14-9 at 2; *see also* doc. 14 at 38–39 ¶¶ 165, 167, 171, 173). Accordingly, the court **DENIES** the motion to dismiss Count Four as to VetsUSA.

### C. Aiding and Abetting Breach of Fiduciary Duty – Counts Ten and Eleven

Mr. Worthington and VetsUSA seek to dismiss Counts Ten and Eleven (aiding and abetting breach of fiduciary duty) which Mr. McKinney brings individually and derivatively on behalf of Primus against both Mr. Worthington and VetsUSA based on Mr. Pinter's alleged breach of fiduciary duties owed to Mr. McKinney. (Doc. 64-1 at 26–27; *see* Doc. 14 at 37-40, ¶¶ 162–73).

To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach." *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003).

Mr. McKinney alleges that Mr. Worthington and VetsUSA knew of Mr. McKinney and Mr. Pinter's joint ownership of Primus and therefore were aware of Mr. McKinney and Mr. Pinter's fiduciary duties to each other. (Doc. 14 at 37, 39 ¶¶ 163–64, 166, 169–70, 172). Mr. McKinney also alleges that Mr. Worthington and VetsUSA participated in, or at least had knowledge of, Mr. Pinter diverting the contract with VetsUSA from Primus to Pinter Memorials and that Mr. Worthington's

complaints to Mr. Pinter caused Mr. Pinter to do so. (*Id.* at 15–16, 38–39 ¶¶ 80, 165, 167, 171, 173; Doc. 14-4 at 2; Doc. 14-9 at 2). This is sufficient to state a plausible claim that Mr. Worthington and VetsUSA aided and abetted Mr. Pinter's breach of his fiduciary duty to Mr. McKinney and Primus. Accordingly, the court **DENIES** Mr. Worthington and VetsUSA's motion to dismiss Counts Ten and Eleven.

### D. Unfair Competition – Count Fifteen

Mr. Worthington and VetsUSA seek to dismiss Count Fifteen (unfair competition) which Mr. McKinney brings on behalf of Primus against both Mr. Worthington and VetsUSA. (Doc. 64-1 at 2–30; *see* Doc. 14 at 43–44, ¶¶ 194–98).

It appears that under Pennsylvania law, a well-pleaded claim for tortious interference can support a claim for unfair competition, although a party cannot recover for both causes of action. *See ID Security Systems Canada, Inc. v. Checkpoint Systems, Inc.*, 249 F. Supp. 2d 622, 688 (E.D. Pa. 2003) (relying on the Restatement (Third) of Unfair Competition § 1 cmt. g for guidance, which states: "As a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition."); *see also Med. Diagnostic Labs., LLC v. Indep. Blue Cross*, 2017 WL 3776619, at *9 (E.D. Pa. Aug. 30, 2017) (unpublished).

Here, contrary to Mr. Worthington and VetsUSA's contention, Mr. McKinney's allegations are well-pleaded: he alleges that Mr. Worthington and

VetsUSA have unlawfully used and profited from a confidential fabrication process and business information about operations, suppliers, vendors, labor, facilities, machinery, financial conditions, and profitability. (Doc. 70 at 26, 28; Doc. 14 at 14, 15–16, 44 ¶¶ 73, 80, 195). Moreover, as explained above, Mr. McKinney has stated a claim for tortious interference, which appears to support an alternative claim for unfair competition under Pennsylvania law. Accordingly, the court **DENIES** Mr. Worthington and VetsUSA's motion to dismiss Count Fifteen.

### III. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Defendants VetsUSA and Mr. Worthington's motion to dismiss.

The court **GRANTS** the motion and **DISMISSES** Count Three and Count Four with respect to Mr. Worthington. The court **DENIES** the motion as to Count Four with respect to VetsUSA, and Count Eight, Count Nine, Count Ten, Count Eleven, and Count Fifteen.

**DONE** and **ORDERED** this November 26, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE